1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICKALOS DEMOND GRAY, | Case No.:  14cv02730 JAH (RBB) |
| Petitioner, | **REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS [ECF NO. 1]** |
| v. | |
| RONALD J. RACKEY, | |
| Respondent. | |

Petitioner Nickalos Demond Gray, a state prisoner proceeding pro se and informa pauperis, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in the Southern District of California on November 17, 2014 [ECF Nos. 1, 3].[1]  There, he challenges his convictions for carjacking, possession of a deadly weapon, and vicarious liability for his codefendant's use of a firearm in the commission of the carjacking.  (See Pet. 2, ECF No. 1.)  Gray argues that the trial court committed prejudicial error by excluding evidence of third-party culpability (ground one).  (Id. at 2, 6.)  Petitioner also maintains that the prosecution argued facts not in evidence multiple times during its

_____

[1]  The Court will cite to all filed documents using the page numbers assigned by the electronic case filing system.

1

closing argument, rendering the trial fundamentally unfair (ground two).  (Id. at 7.)  He claims that the cumulative effect of grounds one and two warrants reversal (ground three).  (Id. at 8.)

The Respondent, Warden Ronald J. Rackey, filed a Response and a Notice of Lodgment on January 20, 2015 [ECF Nos. 6, 7].  The Court ordered Rackey to submit a supplemental brief because he failed to provide a substantive analysis of Petitioner's claims.  (Mins. 1, May 4, 2015, ECF No. 8.)  Respondent submitted his Supplemental Answer on May 28, 2015 [ECF No. 9].  Regarding ground one, Rackey argues that Petitioner's claim should be denied because it does not raise a federal question.  (Answer Attach. #1 Mem. P. & A. 9, ECF No. 6.)  Further, Respondent asserts that the appellate court reasonably rejected the alleged error.  (Id. at 9-10.)  Addressing ground two, he contends that Gray's claim of prosecutorial misconduct was adequately cured.  (Suppl. Answer 4-5, ECF No. 9.)  Finally, discussing ground three, Rackey maintains that the claim of cumulative error was reasonably rejected by the California Court of Appeal. (Answer Attach. #1 Mem. P. & A. 18, ECF No. 6.)  No traverse was filed.

## I.  FACTUAL BACKGROUND

On September 8, 2011, Victor Garcia sat in his parked car in front of his home to charge his cell phone.  (Lodgment No. 5, People v. Dixon, No. D061943, slip op. at 2 (Cal. Ct. App. Aug. 30, 2013).)  An African-American man, later identified as Petitioner's codefendant Dixon, approached Garcia and told him to give him the car. (Id.)  Dixon then revealed and cocked a gun.  (Id.)  Garcia exited the car, lay face down on the sidewalk at Dixon's order, and looked at Dixon.  (Id. at 2-3.)  Garcia heard another man open the driver's side door of his car, get into the car, and speak with what he described as an African-American accent.  (Id. at 3.)  Dixon then entered the car and they drove away.  (Id.)

Police tracked down Garcia's vehicle later that night and initiated a traffic stop. (Id.)  They found Gray driving with Dixon in the passenger seat and Oscar Evans in the backseat.  (Id.)  During a subsequent lineup, Garcia identified Dixon as the man who

2

pointed a gun at him but was unable to identify Petitioner and Evans.  (Id. at 3-4.)  Gray told officers he borrowed the car from his child's mother's roommate's brother "L."  (Id. at 4.)  The mother of Petitioner's child, however, testified that she had no roommate on the date of the incident and did not know "L." (Id.)

A jury found Gray guilty of carjacking, possession of a deadly weapon, and vicarious liability for Dixon's use of a firearm.  (Id. at 2.)  He was sentenced to four years and eight months in prison.  (Lodgment No. 2, Rep.'s Appeal Tr. vol. 4, 845, 859, May 11, 2012.)[2]

## II.  PROCEDURAL BACKGROUND

On November 5, 2012, Petitioner appealed his convictions to the California Court of Appeal.  (Lodgment No. 3, Appellant's Opening Brief, People v. Dixon, No. D061943 (Cal. Ct. App. Aug. 30, 2013).)  On August 30, 2013, the court of appeal affirmed the judgment.  (Lodgment No. 5, People v. Dixon, No. D061943, slip op. at 1.)  Gray filed a petition for review with the California Supreme Court.  (Lodgment No. 6, Petition for Review, People v. Dixon, [No. S213868] (Cal. Nov. 13, 2013).)  On November 13, 2013, the California Supreme Court denied his petition without citation or comment. (Lodgment No. 7, People v. Dixon, No. S213868, order (Cal. Nov. 13, 2013).)

Gray did not file any petitions for writ of habeas corpus in state court.  Petitioner constructively filed his Petition in this Court on November 14, 2014 [ECF No. 1].[3]

_____

[2]  Gray's Petition states that the length of his sentence is five years and eight months; the Reporter's Transcript and Clerk's Transcript, however, establish the sentence as four years and eight months.  (Compare Pet. 1, ECF No. 1, with Lodgment No. 2, Rep.'s Appeal Tr. vol. 4, 859, and Lodgment No. 1, Clerk's Tr. Vol. 1, 166, May 11, 2012 (abstract of judgment).)

[3]  The exhibits attached to the Petition show that it was placed in the mail on that date. Under the mailbox rule, the Court considers a petition filed on the date a petitioner hands it to prison authorities for mailing.  Houston v. Lack, 487 U.S. 266, 276 (1988); Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010) (citations omitted).

## III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244, applies to all federal habeas petitions filed after April 24, 1996.  Woodford v. Garceau, 538 U.S. 202, 204 (2003) (citing Lindh v. Murphy, 521 U.S. 320, 326 (1997)).  AEDPA sets forth the scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C.A. § 2254(a) (West 2006); see Reed v. Farley, 512 U.S. 339, 347 (1994); Hernandez v. Ylst, 930 F.2d 714, 719 (9th Cir. 1991).  Because Gray's Petition was filed on November 14, 2014, AEDPA applies to this case.  See Woodford, 538 U.S. at 204.

Section 2254(d) reads as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d).

To present a cognizable federal habeas corpus claim, a state prisoner must allege his conviction was obtained "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.A. § 2254(a).  A petitioner must allege the state court violated his federal constitutional rights.  Hernandez, 930 F.2d at 719; Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990).

4

1    A federal district court does "not sit as a 'super' state supreme court" with general

2  supervisory authority over the proper application of state law.  Smith v. McCotter, 786

3  F.2d 697, 700 (5th Cir. 1986); see also Lewis v. Jeffers, 497 U.S. 764, 780 (1990)

4  (holding that federal habeas courts must respect a state court's application of state law);

5  Jackson, 921 F.2d at 885 (explaining that federal courts have no authority to review a

6  state's application of its law).  Federal courts may grant habeas relief only to correct

7  errors of federal constitutional magnitude.  Oxborrow v. Eikenberry, 877 F.2d 1395, 1400

8  (9th Cir. 1989) (stating that federal habeas courts are not concerned with errors of state

9  law "unless they rise to the level of a constitutional violation").

10    The Supreme Court, in Lockyer v. Andrade, 538 U.S. 63 (2003), stated that

11  "AEDPA does not require a federal habeas court to adopt any one methodology in

12  deciding the only question that matters under § 2254(d)(1) -- whether a state court

13  decision is contrary to, or involved an unreasonable application of, clearly established

14  Federal law." Id. at 71.  In other words, a federal court is not required to review the state

15  court decision de novo.  Id.  Rather, a federal court can proceed directly to the

16  reasonableness analysis under § 2254(d)(1).  Id.

17    The "novelty in . . . § 2254(d)(1) is . . . the reference to 'Federal law, as determined

18  by the Supreme Court of the United States.'"  Lindh v. Murphy, 96 F.3d 856, 869 (7th

19  Cir. 1996) (en banc), rev'd on other grounds, 521 U.S. 320 (1997).  Section 2254(d)(1)

20  "explicitly identifies only the Supreme Court as the font of 'clearly established' rules."

21  Id.

22    Furthermore, with respect to the factual findings of the trial court, AEDPA

23  provides as follows:

24        In a proceeding instituted by an application for a writ of habeas corpus
          by a person in custody pursuant to the judgment of a State court, a
25        determination of a factual issue made by a State court shall be presumed to
          be correct.  The applicant shall have the burden of rebutting the presumption
26        of correctness by clear and convincing evidence.
27

28  28 U.S.C.A. § 2254(e)(1).

5

## IV.  DISCUSSION

### A.  Exclusion of Evidence of Third-Party Culpability

Gray contends that the trial court committed prejudicial error when it excluded third-party culpability evidence.  (Pet. 6, ECF 1.)  He maintains that two incidents occurred soon after the carjacking where Garcia felt intimidated by an African-American man.  (Id.)  During an Evidence Code section 402 hearing, Garcia testified that while he walked his dog three days after the carjacking, he noticed an African-American man staring at him.  (Lodgment No. 5, People v. Dixon, No. D061943, slip op. at 5.)  While walking away from Garcia, the man turned to look at him at least ten times.  (Id.)  The man allegedly stopped between two bushes, turned to stare at Garcia for five seconds, and then discharged a firearm into the dirt.  (Lodgment No. 2, Rep.'s Appeal Tr. vol. 1, 139-40, Feb. 24, 2012.)  After crossing over a fence, the man again turned to stare at Garcia until Garcia walked back to the front steps of his house.  (Id. at 141.)  Two days later, Garcia saw the same man walking down the street with another African-American man.  (Id. at 142.)  Garcia recalled that the two men were talking but became silent when they saw him.  (Id.)  They made brief comments, looked at each other, and continued walking down the street.  (Id.)  Garcia was unsure whether the men were involved in the carjacking.  (Id. at 143.)

The trial court determined that because the defense's proffered evidence was speculative and irrelevant, it was inadmissible.  (Lodgment No. 5, People v. Dixon, No. D061943, slip op. at 6.)  Petitioner maintains that this was an impermissible limitation on his right to present a complete defense.  (Pet. 6, ECF No. 1.)  "Not only did the court ignore defense counsel's argument, it also ignored the victim's statements that he thought the man that he encountered outside his apartment was somehow related to the carjacking."  (Id.)  Respondent argues that that the trial court's discretion under state law cannot be challenged on federal habeas review.  (Answer Attach. #1 Mem. P. & A. 9, ECF No. 6; Suppl. Answer 1, ECF No. 9 (citation omitted).)  He further asserts that the California Court of Appeal's finding that the third-party culpability evidence was

properly excluded is binding on federal review.  (Answer Attach. #1 Mem. P. & A. 9, ECF No. 6 (citations omitted); Suppl. Answer 1-2, ECF No. 9 (citation omitted).) Rackey cites case law for the proposition that "absent considerable detail and specific information connecting an identified third party to the charged crime, third party culpability evidence should be excluded."  (Suppl. Answer 3, ECF No. 9 (citations omitted).)  For these reasons, Respondent concludes that a violation of constitutional rights did not occur.

> Simply stated, Gray offers no evidence to suggest that the exclusion of the proffered evidence violated any of his federal due process rights. Consequently, the state appellate court's rejection of the alleged evidentiary error was neither contrary to, nor an unreasonable application of, clearly established United States Supreme Court precedent, and the claim should also be rejected by this Court.

(Answer Attach. #1 Mem. P. & A. 9-10, ECF No. 6 (citations omitted).)  Respondent Rackey argues that there is no basis for granting federal habeas relief.

> It does not appear that any Supreme Court decision dealt with a set of materially indistinguishable facts and decided the case differently from how the state court of appeal ruled.  Nor does it appear that the state court identified the correct legal principle from a Supreme Court decision but unreasonably applied the principle to the facts of this case.  Relief is thus unavailable on this claim under the AEDPA.

(Suppl. Answer 3-4, ECF No. 9 (citing Williams v. Taylor, 529 U.S. 362, 412-13 (2000).)

Gray's petition for review to the California Supreme Court was denied without a reasoned decision.  (See Lodgment No. 7, People v. Dixon, No. S213868, order.) Petitioner had asserted his argument that the trial court committed prejudicial error by excluding evidence of third-party culpability in his direct appeal to the California Court of Appeal.  (Lodgment No. 3, Appellant's Opening Brief at 10-27, People v. Dixon, No. D061943.)  The appellate court denied the claim on the merits.  (Lodgment No. 5, People v. Dixon, No. D061943, slip op. at 5-7.)

In <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 804 (1991), the Supreme Court adopted a presumption that gives no effect to unexplained state court orders but "looks through" them to the last reasoned state court decision.  The last reasoned decision to address ground one in Gray's Petition is the state appellate court opinion denying his claims on the merits.  This Court will therefore look through the silent denial by the state supreme court to the appellate court opinion.

The state court of appeal found that the trial court did not abuse its discretion in excluding the evidence of third-party culpability.  (Lodgment No. 5, <u>People v. Dixon</u>, No. D061943, slip op. at 7.)  It noted that Petitioner failed to present any direct or circumstantial evidence connecting the African-American men to the carjacking.  (<u>Id.</u>)  Because the trial court did not err in excluding the evidence, the court of appeal found it did not violate Gray's constitutional rights.  (<u>Id.</u> (citations omitted).)  This ruling was neither contrary to, nor an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

A defendant has a constitutional right to a meaningful opportunity to present a complete defense, subject to a state's broad latitude to establish rules excluding evidence from criminal trials.  <u>Nevada v. Jackson</u>, 569 U.S. ___, ___, 133 S. Ct. 1990, 1992 (2013) (citations omitted) ("Only rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence."). "[State and federal evidence] rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'"  <u>United States v. Scheffer</u>, 523 U.S. 303, 308 (1998) (citations omitted). Moreover, "the right to introduce relevant evidence can be curtailed if there is a good reason for doing that."  <u>Clark v. Arizona</u>, 548 U.S. 735, 770 (2006).

"'Incorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected.'"  <u>Tinsley v. Borg</u>, 895 F.2d 520, 530 (9th Cir. 1990) (quoting <u>Lincoln v. Sunn</u>, 807 F.2d 805, 816 (9th Cir. 1987)).  "The state

court's decision to exclude certain evidence must be so prejudicial as to jeopardize the defendant's due process rights." Id. (citing Miller v. Stagner, 757 F.2d 988, 994 (9th Cir. 1985)).

> To evaluate whether exclusion of evidence reaches constitutional proportions, [courts] should consider five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense.

Id. (citation omitted). Courts then balance the importance of the evidence against the state's interest in exclusion. Id. (citing Miller, 757 F.2d at 994.)

While the proffered evidence of third-party culpability may have been reliable and capable of evaluation by the trier of fact, it has little probative value. Garcia conceded that he did not know whether the two men were involved in the carjacking, and the men never spoke to him. Though he felt intimidated by their staring at him, it is speculative to conclude that an act of staring connects someone to a crime. As a result, the court of appeal reasonably concluded that Petitioner's constitutional rights were not violated by the exclusion of this evidence. Accordingly, Gray's request for habeas relief on the basis alleged in ground one should be **DENIED**.

**B.    Prosecutorial Misconduct**

In ground two, Petitioner contends that the prosecutor argued facts not in evidence nine times during her closing argument, and as a result, his trial was fundamentally unfair. (Pet. 7, ECF No. 1 (citations omitted).) According to Gray, the prosecutor's misconduct was directed at material points that supported Gray's defense. (Id. (citations omitted).) Respondent counters that Petitioner's claim of prosecutorial misconduct was reasonably rejected by the court of appeal. (Answer Attach. #1 Mem. P. & A. 10, ECF No. 6.) He argues that Gray presents no evidence that the prosecutor's conduct so infected the trial that Gray was denied due process. (Id. at 17 (citing Duckett v. Godinez, 67 F.3d 734, 743 (9th Cir. 1995).) Rackey also contends that Petitioner has failed to

1   identify the challenged comments, despite his page citations to the record.  (Suppl.

2   Answer 4, ECF No. 9 (citing Pet. 7, ECF No. 1).)  The Respondent acknowledges that the

3   trial judge sustained defense counsel's objections to eight of the nine challenged

4   statements by the prosecutor.  (See id.)  Even so, Rackey maintains that "this claim is

5   vague and conclusory and does not warrant habeas relief."  (Id.)  The Respondent argues

6   that sustaining defense counsel's objections and admonishing the jury not to consider

7   counsel's argument as evidence was sufficient to cure any error.  (Id. at 4-5 (citations

8   omitted).)

9       A criminal defendant's due process rights are violated when a prosecutor's

10  misconduct results in a trial that is "fundamentally unfair."  See Darden v. Wainwright,

11  477 U.S. 168, 193 (1986); Smith v. Phillips, 455 U.S. 209, 219 (1982) ("[T]he touchstone

12  of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the

13  trial, not the culpability of the prosecutor.").  To obtain federal habeas relief on this

14  claim, Gray must do more than demonstrate that the prosecutor's comments were

15  improper.  Tak Sun Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005); see also

16  Darden, 477 U.S. at 180-81.  Petitioner must show they "'so infected the trial with

17  unfairness as to make the resulting conviction a denial of due process.'"  Darden, 477

18  U.S. at 181 (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)); accord Greer v.

19  Miller, 483 U.S. 756, 765 (1987); Tak Sun Tan, 413 F.3d at 1112; Thompson v. Borg, 74

20  F.3d 1571, 1576 (9th Cir. 1996).  In measuring the fairness of the trial, a court may

21  consider, inter alia, "(1) whether the prosecutor's comments manipulated or misstated the

22  evidence; (2) whether the trial court gave a curative instruction; and (3) the weight of the

23  evidence against the accused."  Tak Sun Tan, 413 F.3d at 1115 (citing Darden, 477 U.S.

24  at 181-82).  If prosecutorial misconduct is established, and it was constitutional error, the

25  court must decide whether the constitutional error was harmless.  Thompson, 74 F.3d at

26  1576-77.

27      At the outset, the Respondent's argument that Gray's ground two is vague and

28  conclusory because he did not identify the specific statements at issue, (Suppl. Answer 4,

1   ECF No. 9 (citing Pet. 7, ECF No. 1)), is without merit.  Pro se habeas petitions are

2   "given the benefit of liberal construction."  Porter v. Ollison, 620 F.3d 952, 958 (9th Cir.

3   2010) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)).  Between the Petition, the

4   opinion of the California Court of Appeal, and the trial transcript, the Court is able to

5   discern the statements Petitioner argues constituted prosecutorial misconduct.  The Court

6   addresses each statement below.

7       **1.    Statement one:  the black jacket**

8       In her closing argument, the prosecutor made the following statement, which Gray

9   claims constitutes prosecutorial misconduct:

10          How do we know this black jacket doesn't belong to [Petitioner]?
11      He's got all his other property inside the car.  He's got his life inside this
        backpack, which is in the backseat of Victor's carjacked car.  How do we
12      know this jacket doesn't belong to him too?  He was never asked by
        Detective Smith. . . .  Again, why?  Because the victim said the guy with the
13      gun was wearing either a blue or black shirt, not a jacket.  When H called --

14

15   (Lodgment No. 2, Rep.'s Appeal Tr. vol. 4, 704, 784, Mar. 1, 2012.)  Before she

16   continued, defense objected to this statement as misstating the evidence, and the trial

17   court sustained the objection.  (Id at 784-85.)  Neither Gray nor his codefendant requested

18   an admonition with the objection.  (Lodgment No. 5, People v. Dixon, No. D061943, slip

19   op. at 10.)  Earlier in the prosecutor's closing arguments, after the defense raised a similar

20   objection, the court admonished the jury to rely on the transcript rather than the

21   attorney's closing arguments as evidence.  (Id. at 10-11.)  Due to this prior instruction,

22   the court of appeal found Gray was not prejudiced by this statement by the prosecutor.

23   (Id. at 11.)

24       While this statement may have misstated the evidence, the trial court sustained

25   defense counsel's objection, signaling to the jury that the prosecutor's remark was

26   improper.  Although the trial court did not give a curative instruction, it had previously

27   instructed the jury on four separate occasions to rely on the transcript for evidence, not on

28   the prosecutors' arguments.  (See Lodgment No. 2, Rep.'s Appeal Tr. vol. 4, 734, 748,

773, 775.)  The prior curative instructions weigh against finding that Gray's trial was unfair because of this comment.  See Tak Sun Tan, 413 F.3d at 1115 (citing Darden, 477 U.S. at 181-82.  The court of appeal reasonably concluded that this statement did not prejudice Gray, and Petitioner has done nothing to show that this statement "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden, 477 U.S. at 181 (quoting Donnelly, 416 U.S. 637).  Gray's claim that the prosecutor's misconduct and Petitioner's resulting conviction entitle him to habeas relief should be **DENIED**.

### 2.    Statement two:  timing of events

Gray complains about the prosecutor's closing remarks concerning what transpired over ten minutes.

> It is not reasonable, it's not a reasonable conclusion, not at all. That 10 minutes would be enough time for somebody else to take that car from Victor Garcia at gunpoint, go over to Tyra Jones' complex, go inside Tyra Jones' apartment kicking it with Gray, and Gray happens to get a call my buddy is in Chula Vista, I'm going to go visit him, can I borrow your car?

(Lodgment No. 2, Rep.'s Appeal Tr. vol. 4, 786.)  Defense counsel objected to this statement on the basis of facts not in evidence, which the trial court sustained.  (Id.)  The trial court then gave a curative instruction, stating, "Again, you are going to rely on the evidence, if need be the record, we'll [sic] show you what the evidence is."  (Id.)

The appellate court agreed that the prosecutor's remark mischaracterized the evidence, but the court found that this error was not prejudicial because of defense counsel's objection and the trial court's admonition and instruction to the jury. (Lodgment No. 5, People v. Dixon, No. D061943, slip op. at 11.)  This conclusion was reasonable and not contrary to clearly established federal law.  "A judge's prompt corrective action in response to improper comments usually is sufficient to cure any problems arising from such improper comments."  United States v. Washington, 462 F.3d 1124, 1136 (9th Cir. 2006) (citing United States v. Younger, 398 F.3d 1179, 1192 (9th

Cir. 2005); United States v. McChristian, 47 F.3d 1499, 1507-08 (9th Cir. 1995)).  Gray has not demonstrated how this statement rendered his trial fundamentally unfair in light of the curative instruction.  Consequently, his claim that this misconduct resulted in a denial of due process should be **DENIED**.

### 3.    Statement three:  Petitioner's accent

The prosecutor's third statement Gray complains about is as follows:

> It's not reasonable that somebody is going to carjack a car at gunpoint, turn around and give it to two other guy[s].  And that Defendant Gray has the same accent that the person who aided and abetted the guy with the gun had back on the night of the blackout.

(Lodgment No. 2, Rep.'s Appeal Tr. vol. 4, 787.)  Defendant objected that there was no evidence regarding whether the accents were the same.  (Id.)  This objection was overruled.  (Id.)  The California Court of Appeal found that the prosecutor's statement was not misconduct in light of Garcia's testimony that he believed the second man involved in the carjacking was African-American because of his accent and testimony from the officer who searched Petitioner on the evening of the incident that Gray's accent was consistent with what the officer has heard in the African-American community.  (Lodgment No. 5, People v. Dixon, No. D061943, slip op. at 12.)  This Court agrees.

"The prosecution is granted reasonable latitude to fashion closing arguments." United States v. Gray, 876 F.2d 1411, 1417 (9th Cir. 1989) (citing United States v. Patel, 762 F.2d 784, 795 (9th Cir. 1985)).  "Although it is improper to base closing arguments upon evidence not in the record, prosecutors are free to argue reasonable inferences from the evidence."  Id. (citations omitted).  Garcia testified that he heard the person seated in the driver's seat of his car speak in an accent that he believed to be from an African-American person.  (Lodgment No. 2, Rep.'s Appeal Tr. vol. 1, 28, 58-59, Feb. 24, 2012.)  Officer Lopez testified that Gray's accent was "a slang-type of accent."  (Lodgment No. 2, Rep.'s Appeal Tr. vol. 1, 178, 238, Feb. 27, 2012.)  He elaborated, "I wouldn't say

specifically an African-American accent, but it does fall in line with the African-American community that I deal with on a regular basis in southeast San Diego." (Id. at 243.)

Based on this testimony, the California Court of Appeal held that it was reasonable for the prosecutor to argue that the accent of the person Garcia heard and Petitioner's accent were the same. The conclusion that the prosecutor's statement was not misconduct is a reasonable application of federal law. Gray's claim of prosecutorial misconduct relating to this statement should be **DENIED**.

### 4.    Statement four:  Dixon's hat

Petitioner additionally claims the prosecutor committed misconduct when she stated, "Okay. [The hat] matches the blue shirt and his white polo shorts. So he just happens to put on the hat, the same hat the victim ID's the carjacker was wearing." (Lodgment No. 2, Rep.'s Appeal Tr. vol. 4, 788.) The defense objected to this statement on the basis of facts not in evidence, and this objection was sustained. (Id.) But the California Court of Appeal found that there was evidence to support the prosecutor's statement. (Lodgment No. 5, People v. Dixon, No. D061943, slip op. at 13.) Even if there were not, any error was remedied when defense counsel's objection was sustained. (Id.) The appellate court also explained that although no admonition was given, multiple curative instructions had previously been given to the jury. (Id.)

The appellate court was reasonable in finding no prosecutorial misconduct. At trial, Garcia identified a blue and white hat as the hat worn by the person who stole his car. (Lodgment No. 2, Rep.'s Appeal Tr. vol. 1, 78.) This hat had been marked as exhibit number twenty-one, (id.), and Gray's codefendant identified the hat as the one he found in the backseat of the car and put on, (Lodgment No. 2, Rep.'s Appeal Tr. vol. 4, 621, 638-39, Feb. 29, 2012). Based on this testimony, it was a reasonable inference that the hat Dixon put on was the same hat Garcia identified. See Gray, 876 F.2d at 1417 (citations omitted). The prosecutor's statement was not improper. But even if it were, any error was adequately cured by the sustained objection and the prior admonitions to

14

the jury.  As a result, Petitioner's claim that this alleged act of prosecutorial misconduct deprived Gray of a fair trial should be **DENIED**.

### 5.      Statement five:  Jones's meetings with investigators

The prosecutor's fifth comment Gray complains about is as follows:

> If [Jones] knew she had to talk to [the district attorney's investigator], she wouldn't have talked to him.  Again, this is closer to the crime.  This is before she's had an opportunity to meet with defense investigators and go over the story.  This is before she has an opportunity to hear from the defense investigator, hey why did you meet with the DA investigator?

(Lodgment No. 2, Rep.'s Appeal Tr. vol. 4, 791.)  Defense counsel objected to this statement on the basis of facts not in evidence.  (Id.)  This objection was sustained.  (Id.)  The court of appeal concluded the comment constituted harmless error, noting that the prosecutor had apparently misspoken and meant to say that Jones would have declined to speak to the district attorney's investigator if she known she was allowed to refuse.  (Lodgment No. 5, People v. Dixon, No. D061943, slip op. at 14.)  The defense counsel's objection was sustained, and although the trial court did not admonish the jury, it had previously instructed the jury that arguments are not evidence after similar objections.  (Id. (citation omitted).  The appellate court added that "it is not reasonably probable that the jury believed defense investigators attempted to influence Jones to testify untruthfully based on the prosecutor's statement as there was no evidence in that regard . . . ."  (Id.)

The court of appeal's conclusion that this statement constituted harmless error is not an unreasonable application of Supreme Court law.  The trial court sustained defense counsel's objection and had previously admonished the jury following a similar sustained objection.  Moreover, it was reasonable for the court of appeal to conclude that the jury would likely not believe the prosecutor's statements in light of the lack of evidence supporting those statements.  Petitioner has not shown that this remark resulted in a denial of due process.  See Darden, 477 U.S. at 181 (quoting Donnelly, 416 U.S. 637).  His claim of prosecutorial misconduct and a violation of his constitutional rights based upon this statement should be **DENIED**.

15

### 6.     Statement six:  Ashlock's testimony

Gray next argues that the following statement was prosecutorial misconduct:

> Again, [Witness Ashlock] says that they return -- or I'm sorry.  That she put Tada -- Tadece and Red leave around 9:58 together.  She has no reason to lie and say they left together when they didn't.  She said she was outside at the barbeque.  She was hanging out, getting the barbeque ready. They were in chairs.  I think she was actually on the staircase.

(Lodgment No. 2, Rep.'s Appeal Tr. vol. 4, 792-93.)  This statement was objected to by defense counsel on the basis of facts not in evidence, and the trial court sustained the objection.  (Id. at 793.)  The appellate court found that there was evidence that Ashlock may have been on the staircase when the defendants left her home, based on her testimony on cross-examination.  (Lodgment No. 5, People v. Dixon, No. D061943, slip op. at 15.)  Regardless, it concluded that any error was nonprejudicial and cured because the trial court sustained the objection and previously instructed the jury that arguments were not evidence.  (Id.)  This was a reasonable conclusion.

Ashlock testified on cross-examination that she was sitting on the stairs at 9:58 p.m.  (Lodgment No. 2, Rep.'s Appeal Tr. vol. 3, 387, 481, Feb. 28, 2012.)  As a result, the prosecutor's statement was supported by the evidence.  Even so, defense counsel's objection was sustained, and the court had previously admonished the jury.  See Tenorio v. United States, 390 F.2d 96, 98 (9th Cir. 1968) (finding that a prosecutor's misstatement was not seriously prejudicial "especially when considered in the light of the court's instruction to the jury that 'statements and arguments of counsel are not evidence'").  Accordingly, Petitioner's claim that this statement constituted prosecutorial misconduct should be **DENIED**.

### 7.     Statement seven:  the length of time Garcia looked at Dixon

Gray contends the prosecutor committed prosecutorial misconduct when she stated, "The most important thing [Garcia] did do was spend a lot of time looking at Defendant Dixon the night of the crime, at least 30 seconds to take a look at him." (Lodgment No. 2, Rep.'s Appeal Tr. vol. 4, 799 (emphasis added).)  Defense counsel

16

objected on the basis of facts not in evidence, and the trial court sustained this objection. (Id.)  There was no evidence to support the prosecutor's statement regarding the length of time Garcia looked at Dixon.  (Lodgment No. 5, People v. Dixon, No. D061943, slip op. at 16.)  Rather, the evidence was that Garcia spent ten to fifteen seconds looking at Dixon.  (Id.)  The appellate court concluded that the prosecutor's comment was not prejudicial, noting that the trial court sustained defense counsel's objection.  (Id.)  Garcia testified that he intentionally turned to look at Dixon and could see his entire face.  (Id.)  Garcia was also able to identify Dixon as the person who pointed the gun at him.  (Id.)  The appellate court's conclusion that it was not reasonably probable that a more favorable result would have been obtained without the misstatement by the prosecutor is not contrary to clearly established federal law.  (Id.)

The prosecutor misstated Garcia's testimony, but even without this, there was other evidence to support Garcia's identification of Dixon, Gray's codefendant.  Moreover, in light of the trial court sustaining defense counsel's objection, Petitioner has not shown how this statement resulted in a denial of due process.  See Darden, 477 U.S. at 181 (quoting Donnelly, 416 U.S. 637).  Gray's claim that the prosecutor's misconduct infected the trial and ensuing conviction should be **DENIED**.

**8.     Statement eight:  search for "L"**

Petitioner additionally maintains that prosecutorial misconduct occurred when the prosecutor stated, "L., no one knows L.  There was no way to find L.  The District Attorney Investigator tried to locate L."  (Lodgment No. 2, Rep.'s Appeal Tr. vol. 4, 800.)  Defense counsel objected on the basis of facts not in evidence, and the objection was sustained.  (Id.)  The trial court added, "Keep in mind you're going to rely on the evidence not the arguments as to what the evidence is."  (Id.)  The court of appeal found that any harm from this statement was cured through the curative instruction and the instructions regarding closing arguments not being evidence.  (Lodgment No. 5, People v. Dixon, No. D061943, slip op. at 17.)  This conclusion was reasonable.

"A jury is presumed to follow its instructions." Weeks v. Angelone, 528 U.S. 225, 234 (2000) (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)).  In most circumstances, a prompt curative instruction is enough to cure any problems from improper statements by the prosecutor.  Washington, 462 F.3d at 1136 (citing Younger, 398 F.3d at 1192; McChristian, 47 F.3d at 1507-08).  Here, after sustaining defense counsel's objection, the trial judge promptly instructed the jury that they were to rely on evidence and not arguments.  Gray has not demonstrated how his due process was denied in light of this prompt curative instruction.  See Darden, 477 U.S. at 181 (quoting Donnelly, 416 U.S. 637).  Consequently, his claim for habeas relief based on prosecutorial misconduct in making this statement should be **DENIED**.

### 9.   Statement nine:  Evans's testimony

Petitioner's final challenge is to the following two statements by the prosecutor:

Oscar Evans, OE, said, Gray and Dixon left walking together, left together.
[Ashlock] said [the] same thing. . . .  Both return in mystery car.  Gun still in
car.  Gun wiped clean by Dixon, but he still flees with it, risking his own
life, wearing L.A. hat despite Oscar Evans' sworn testimony saying none of
his friends would wear an L.A. hat.

. . . .

I think he even said he wouldn't let an L.A. hat in his house.

(Lodgment No. 2, Rep.'s Appeal Tr. vol. 4, 801-02.)  These statements were objected to on the bases of facts not in evidence and misstating the testimony.  (Id. at 802.)  The objections were overruled.  (Id.)  After reviewing the trial court record, the California Court of Appeal determined that the prosecutor's statements did not amount to misconduct because the prosecutor drew reasonable inferences from the evidence. (Lodgment No. 5, People v. Dixon, No. D061943, slip op. at 18.)  It added that assuming there were a misstatement of testimony, this did not render the trial unfair.  (Id.)  This Court agrees.

While testifying about Dixon's hat, Evans stated, "I know it wasn't an L.A[.] hat for sure.  We wouldn't wear a L.A[.] hat.  He's not from L.A[.] and neither am I, neither are my friends."  (Lodgment No. 2, Rep.'s Appeal Tr. vol. 3, 528, Feb. 28, 2012.)  Evans also said, "No one under my roof owned a[n] L.A[.] hat."  (Id. at 553.)  This is because they are not fans of the Dodgers, Lakers, or Clippers.  (See id.)  The prosecutor was free to argue reasonable inferences from this testimony.  See Gray, 876 F.2d at 1417 (citations omitted).  Based on his strong statements regarding his and his friends' dislike of teams from Los Angeles, it was reasonable for the prosecutor to draw the inference that none of Evans's friends would wear a Los Angeles hat and that Evans would not let someone with a Los Angeles hat into his house.  As a result, the court of appeal's conclusion regarding this statement was reasonable.  Gray's claim for habeas relief premised on prosecutorial misconduct should be **DENIED**.

In sum, the court of appeal's decision regarding the claims of prosecutorial misconduct was not contrary to, or an unreasonable application of, clearly established United States Supreme Court law.  28 U.S.C.A. § 2254(d)(1).  Ground two in the Petition does not entitle Gray to habeas relief.  Accordingly, Petitioner's second claim for habeas relief should be **DENIED**.

**C.**   **Cumulative Effect of Claims One and Two**

Gray asserts in ground three that the combined effect of the trial court's exclusion of third-party culpability evidence and the prosecutorial misconduct resulted in prejudicial error and warrants reversal.  (Pet. 8, ECF No. 1.)

> When taken together, the prosecutorial misconduct and the court's failure to allow relevant third-party culpability evidence, amount to prejudicial error.  The Court must consider the cumulative prejudice of all the instances of misconduct coupled with the court's error of limiting Mr. Gray's third-party culpability evidence to decide if reversal is required. When the cumulative prejudice of all of the errors that occurred here is considered, reversal is proper.

1
2
3

　　　　　Without these errors, the prosecutor's case against Mr. Gray would have failed.  This Court should therefore grant Mr. Gray's petition or reverse the convictions.

4　(Id.)

5　　　Rackey responds that this claim was reasonably rejected by the court of appeal.

6　(Answer Attach. #1 Mem. P. & A. 18, ECF No. 6.)  He argues that the appellate court's

7　rejection of Petitioner's first two grounds was reasonable.  (Id.)  As a result, "Gray has

8　failed to establish any substantial constitutional error occurred based on any of the

9　aforementioned assertions."  (Id.)  Respondent explains that Petitioner has not

10　demonstrated that any of the assertions in support of his claim of cumulative error have

11　merit.  (Id. at 19.)  Consequently, he cannot show he was harmed by cumulative error.

12　(Id. (citations omitted).)  But, "[t]o the extent any error arguably occurred, the effect was

13　harmless.  Review of the record, without the speculation and conclusory interpretation

14　offered by Gray shows that he received a fair and untainted trial.  The Constitution

15　requires no more."  (Suppl. Answer 6, ECF No. 9 (internal citation omitted).)

16　　　"The Supreme Court has clearly established that the combined effect of multiple

17　trial court errors violates due process where it renders the resulting criminal trial

18　fundamentally unfair."  Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007) (citing

19　Chambers v. Mississippi, 410 U.S. 284, 298, 302-03 (1973)).  Where "no single trial

20　error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative

21　effect of multiple errors may still prejudice a defendant."  United States v. Frederick, 78

22　F.3d 1370, 1381 (9th Cir. 1996).  Where "there are a number of errors at trial, 'a

23　balkanized, issue-by-issue harmless error review' is far less effective than analyzing the

24　overall effect of all the errors in the context of the evidence introduced at trial against the

25　defendant."  Id. (quoting United States v. Wallace, 848 F.2d 1464, 1476 (9th Cir. 1988)).

26　"[W]here the government's case is weak, a defendant is more likely to be prejudiced by

27　the effect of cumulative errors."  Id.

28

1   The court of appeal found that even looking at the alleged errors cumulatively,

2   they were "not unduly prejudicial and it is not reasonably probable that the defendants

3   would have obtained a more favorable result had they not occurred."  (Lodgment No. 5,

4   People v. Dixon, No. D061943, slip op. at 18.)  This Court agrees.  For the reasons

5   discussed, Petitioner's constitutional rights were not violated through the exclusion of

6   third-party culpability evidence or through the statements of the prosecutor.  As a result,

7   there can be no cumulative error.  See Hayes v. Ayers, 632 F.3d 500, 524 (9th Cir. 2011)

8   ("Because we conclude that no error of constitutional magnitude occurred, no cumulative

9   prejudice is possible." (citing United States v. Larson, 460 F.3d 1200, 1217 (9th Cir.

10  2006))).  Accordingly, Gray's ground three should be **DENIED**.

## V.  CONCLUSION

12  For the reasons set forth above, the Petition for Writ of Habeas Corpus should be

13  **DENIED**.  This Report and Recommendation will be submitted to the United States

14  District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. §

15  636(b)(1).  Any party may file written objections with the Court and serve a copy on all

16  parties on or before September 8, 2016.  The document should be captioned "Objections

17  to Report and Recommendation."  Any reply to the objections shall be served and filed

18  on or before September 22, 2016.

19  The parties are advised that failure to file objections within the specified time may

20  waive the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153, 1157

21  (9th Cir. 1991).

22  IT IS SO ORDERED.

24  DATED:  August 11, 2016

Ruben B. Brooks
United States Magistrate Judge

27  cc:   Judge Houston
         All parties

21